**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____ :
                                 :
AJAX ENTERPRISES,                :
                                 :        Civil Action No.
              Plaintiff,         :        04-4539 (NLH)
                                 :
      v.                         :
                                 :
DECLAN FAY, INDUSTRIAL           :         OPINION
INSURANCE AGENCY, AND JOHN       :
DOES 1-10,                       :
              Defendants,        :
                                 :
      v.                         :
_____ :
DECLAN FAY,                      :
              Defendant/Third    :
              Party Plaintiff    :
                                 :
      v.                         :
                                 :
DALE FULLER and SAFETY           :
ALLIANCE GROUP                   :
              Defendant/Third    :
              Party Plaintiff    :
_____
```

**APPEARANCES:**

Andrew L. Indeck, Esq.
Scarinci & Hollenbeck, LLC
1100 Valley Brook Avenue
PO Box 790
Lyndhurst, NJ 07071
*Attorney for Plaintiff Ajax Enterprises*

Christopher Philip Leise, Esq.
White & Williams, LLP
Liberty View
457 Haddonfield Road
Suite 400
Cherry Hill, NJ 08002-2220
*Attorney for Defendant Declan Fay*

Evelyn Cadorin Farkas, Esq.
David C. Donohue, Esq.
Farkas & Donohue, LLC
389 Passaic Avenue
Fairfield, NJ 07004
*Attorneys for Defendant Industrial Insurance Agency*

**HILLMAN, District Judge**

## INTRODUCTION

Plaintiff Ajax Enterprises ("Ajax") brought negligence claims against defendants Declan Fay ("Fay") and Industrial Insurance Agency ("Industrial") alleging that by failing to place Ajax with an existing and viable workers compensation insurance carrier, defendants breached their duty as insurance brokers.[1] Ajax moved for partial summary judgment seeking reimbursement of the finder's fee and all premiums paid in the amount of $192,340.94, a declaration that defendants are obligated to assume the defense and indemnification of all claims, including currently unknown claims that would have been covered, and a determination that it is a "successful claimant" entitling it to payment of attorneys' fees incurred in bringing this action. Defendant Industrial brought a cross motion for summary judgment arguing that it did not serve as Ajax's insurance broker and, therefore, owed no duty to Ajax.

Based on the record before the Court, there are several outstanding genuine issues of material fact precluding the grant

---

[1] Defendants have filed third party complaints against Defendant/Third Party Plaintiff Declan Fay, and Third Party Defendants Dale Fuller and Safety Alliance Group.

of summary judgment.  Specifically, it cannot be decided as a matter of law that defendants Fay and Industrial acted as insurance brokers.  Also, it is not clear from the record whether Safety Alliance, the company that was to have provided Ajax with workers' compensation insurance, is a nonexistent company.  Although Ajax provides a persuasive argument that Safety Alliance does not exist, it must go beyond hearsay statements in moving for summary judgment.  Further, it appears that other agencies in addition to Ajax paid some of the premiums on the alleged nonexistent workers' compensation policy.  Summary judgment cannot be awarded on Ajax's request for reimbursement if the monies were partially paid by other companies.[2]  Finally, it cannot be determined at this stage that Ajax is a prevailing party, and, therefore, we deny Ajax's claim for attorneys' fees without reaching the merits of Ajax's underlying argument.

With respect to Industrial's cross motion for summary judgment, a reasonable fact finder could not conclude that Industrial did not owe a duty to Ajax.  The record contains evidence of Industrial engaging in "broker-like" behavior precluding a finding in Industrial's favor as a matter of law.

---

[2] The record contains copies of checks from Ajax Enterprises, Inc., Ujex Enterprises, Inc., Ajex Enterprises, Inc., and Q-Town, Inc., payable to Safety Alliance.  The referral fee of $30,000 was paid to Industrial by Ajex Enterprises, Inc.

3

**<u>BACKGROUND</u>**

Ajax is a Professional Employer Organization ("PEO") incorporated under the laws of New Jersey.  A PEO contracts with small businesses to "hire" the employees of the small business with the intent that they become employees of the PEO, and then leases the employees back to the small business.  This arrangement permits small businesses to pay less for workers' compensation insurance then if they tried to obtain it on their own.  In addition to contracting with the PEO to provide workers' compensation insurance, the small business is relieved from having to perform the tasks of payroll, benefits, and unemployment insurance.

Justin Sciarra is the owner of Ajax. He also owns Ujex Enterprises, Inc., Ajex Enterprises, Inc., and Q-Town, Inc.  His businesses are owned and operated independently.  Mr. Sciarra is an attorney and held a New Jersey insurance producer license from 1979 until 1993.

In late 2001 and in 2002, the workers' compensation market for PEO's was collapsing.  Mr. Sciarra testified that he had difficulty during this time securing workers' compensation insurance for his PEO businesses, and Ajax's coverage was not being renewed.  Eventually, Mr. Sciarra contacted Todd Hammond, a professional acquaintance who owned a PEO, about coverage. Defendant Industrial was the insurer for Mr. Hammond's PEO.  It

4

appears that Mr. Hammond spoke with someone at Industrial who in turn contacted defendant Declan Fay.  Fay spoke with Mr. Sciarra about Ajax's workers' compensation needs.  Mr. Fay had conversations with Dale Fuller at Safety Alliance about Ajax.  On or about June 27, 2002, Mr. Fay contacted Mr. Sciarra and advised him that Safety Alliance would supply Ajax's workers' compensation coverage.  On or about that same time, Ajex Enterprises paid a $30,000 referral fee to Industrial, and $40,000 was wired to a bank account in the name of Safety Alliance.

Mr. Sciarra requested a Certificate of Insurance from Dale Fuller.  The Certificate was faxed to Mr. Sciarra from Industrial.  The Certificate provided that Safety Alliance Insurance Company was the insurer, Ajax was the insured, and RKM Agency and Associates was the insurance producer.  The policy number listed on the certificate was 66-866-723AS/NJ.

In July 2002, Mr. Sciarra flew to Chicago, Illinois for a lunch meeting with Mr. Fay, John and Mel Rodney (principals of Industrial), and Mr. Hammond.  Mr. Sciarra testified that he requested information about Safety Alliance from Mr. Fay and that Mr. Fay told him that Safety Alliance was a division of St. Paul Fire and Marine Insurance Company, later St. Paul, AIG or Hartford.  Mr. Sciarra testified that Mr. Fay also told him that General Adjustment Bureau paid the claims.

5

On or about February 2003, Ajax submitted its first workers'
compensation claim to Safety Alliance which was subsequently
denied.  Mr. Sciarra became suspicious because he did not receive
the customary reservation of rights letter from Safety Alliance
as part of its denial of claim.  Mr. Sciarra testified in
deposition that he made several phone calls to various entities,
including the General Adjustment Bureau, an unnamed attorney in
New Mexico, the North Carolina Insurance Department, St. Paul
insurance company, and Hartford insurance company.  Based on the
information he received, Mr. Sciarra believed that Safety
Alliance did not exist.  Accordingly, he initiated this action
against defendants Declan Fay and Industrial arguing that, as
insurance brokers, they breached their duty to exercise the
reasonable skill, care and diligence required.

## DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied
that "the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.
P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.   It Cannot Be Determined as a Matter of Law that Defendants Fay and Industrial Were Insurance Brokers for Ajax.**

In its motion for partial summary judgment, Ajax assumes that Fay and Industrial acted as insurance brokers.  There is much in the record to support this assumption.  Fay, an insurance producer, obtained information from Ajax and passed it along to Dale Fuller at Safety Alliance.  There are several emails between Fay and Mr. Sciarra regarding Ajax.  The Certificate of Insurance was faxed to Ajax from Industrial, and a memo from Fay was written on Industrial letterhead.  Fay and principals from Industrial, John and Mel Rodney, were present during the July 2002 luncheon to discuss Ajax's workers' compensation insurance with Safety Alliance.

There is also evidence, however, suggesting that Fay and Industrial were not brokers but rather provided a referral service to Ajax in finding a market for Ajax's workers' compensation needs.  The $30,000 fee paid to Industrial was admitted by all parties to be a "referral fee."  This is in contrast to a commission which is usually paid to brokers by the insurer, not the insured.  Mr. Sciarra, as a former insurance producer and attorney, can appreciate the difference between a referral fee and a commission.  He was also aware of the collapsing market for workers' compensation insurance for PEO's and needed assistance in finding an insurer.  Finally, it is not

8

clear whether Dale Fuller worked for Safety Alliance or may have
served as the "broker" in this transaction.[3]

The distinction between a broker and someone who "finds a
market" is an important one because a broker owes a duty to the
insured and "[i]f he fails to exercise reasonable skill, care and
diligence in effecting the insurance or performing his
undertaking, he renders himself liable . . . for the resulting
damages where, through his negligence or wrongful act, he places
the insurance in an insolvent company, or in a nonexistent
company, or in a company which is not authorized by law to do
business in the state." Gerald v. Universal Agency Inc., 153 A.2d
359, 363 (N.J. Super. 1959).

As a matter of law, taking all inferences in favor of the
non-moving party, it cannot be said that reasonable minds could
not differ over whether defendants Fay and Industrial served as
brokers in obtaining workers' compensation insurance for Ajax.
Accordingly, Ajax's motion for partial summary is denied, and
Industrial's cross motion is denied.

C.   **A Genuine Issue of Material Fact Remains Over Whether
     the Insurer, Safety Alliance, Exists.**

Ajax provides in its moving papers that Mr. Sciarra, after
becoming suspicious after Safety Alliance denied a claim without

---

[3]   As of the date of the filing of the motions and
opposition briefs, Dale Fuller had not been deposed.

providing the normal paperwork, conducted his own investigation.
After several telephone calls to several agencies around the
country, he concluded that Safety Alliance did not exist.  His
recount of his investigation raises some grave concerns over the
existence of Safety Alliance.  His recount, however, is not
evidence that Safety Alliance does not exist.  Federal Rule of
Civil Procedure 56(e) provides in part:

> Supporting and opposing affidavits shall be made
> on personal knowledge, shall set forth such facts
> as would be admissible in evidence, and shall show
> affirmatively that the affiant is competent to
> testify to the matters stated therein. . . . The
> court may permit affidavits to be supplemented or
> opposed by depositions, answers to
> interrogatories, or further affidavits.

Here, plaintiff has submitted the certification of Andrew L.
Indeck, Esquire, attorney for plaintiff, and in support thereof
provides a copy of the deposition transcript of Justin Sciarra.
In its moving papers, plaintiff relies on the deposition
testimony of Mr. Sciarra in support of its argument that Safety
Alliance does not exist.  Mr. Sciarra testified as to what others
told him and, based on those conversations, he concluded that
Safety Alliance did not exist.[4]  Mr. Sciarra's deposition

---

[4]  Additionally, the Certification of Justin Sciarra
contains a letter from The Hartford insurance company, addressed
to the SIA Group (undated but containing a fax transmission date
of January 14, 1996) stating that "The Hartford has learned that
Hartford workers' compensation insurance coverage is being
marketed to agents and other organizations without the The
Hartford's authorization or approval."  This letter not only

testimony is hearsay and, therefore, inadmissible.  <u>See</u>
Fed.R.Civ.P. 56(e); <u>Harry v. National Railroad Passenger Corp.</u>,
No. 03-4704, 2005 WL 1971884, *4 (E.D.Pa. 2005)(*slip
opinion)*(stating that "Plaintiff's deposition testimony, standing
alone, can not defeat summary judgment because it relies on
inadmissible hearsay").

    Even if we were to consider Mr. Sciarra's testimony as a
"state of mind" exception to the hearsay rule, such testimony
cannot be offered to prove the truth of the underlying facts
asserted. <u>Stelwagon Manufacturing Co. v. Tarmac Roofing Systems,
Inc.</u>, 63 F.3d 1267, 1274 (3d Cir. 1995) (providing that
statements made under Fed.R.Evid. 803(3), the "state of mind"
exception, cannot be offered to provide the truth of the
underlying facts asserted); <u>Hotel and Restaurant Employees'
Alliance, et al., v. Allegheny Hotel Co.</u>, 374 F. Supp. 1259, 1263
(W.D. Pa. 1974)(ruling that affidavits containing opinions or
impressions of the state of mind or intent of other persons are
based on hearsay, inadmissable at trial, and cannot be considered
on affidavit submitted under Fed.R.Civ.P. 56(e)).  It can only be
offered as evidence of why Mr. Sciarra believed that Safety
Alliance does not exist. <u>Id.</u>

---

predates the Certificate of Insurance at issue by approximately
six years, it does not refer to Safety Alliance and the policy
numbers listed for the "alleged" programs do not correspond to
the workers' compensation policy number provided to Ajax.

On the other hand, the defendants do not provide any
evidence that Safety Alliance does exist, and as Ajax points out,
the defendants also assume for purposes of their third party
complaints, that Safety Alliance is nonexistent.  However, taking
all inferences in favor of the non-moving party, it cannot be
ruled as a matter of law that Safety Alliance does not exist.

**D.   Ajax Did Not Pay All of the Monies Sought to be
       Reimbursed.**

The plaintiff in this case is Ajax Enterprises ("Ajax").
Plaintiff is owned by Justin Sciarra.  In his Certification, Mr.
Sciarra certifies that he owned and operated Ajax Enterprises,
Inc. ("AEI"), Ajex Enterprises, Inc. ("Ajex"), Ujex Enterprises,
Inc. ("Ujex"), and Q-Town, Inc. ("Q-Town").  He further certifies
that AEI, Ajex and Ujex ceased operations on December 2002.
Although Mr. Sciarra states in his Certification that all of the
companies were under the "auspices" of "Ajax,"[5] he testified that
these companies, of which he is the sole shareholder and officer,
are separately owned and operated.

Plaintiff Ajax alleged in its motion that it should be
reimbursed in the amount of $192,340.94, representing payments it

---

[5]   It is not clear whether the reference is to Ajax
Enterprises, or Ajax Enterprises, Inc.  It is also not clear
whether these are two separate companies or the complaint failed
to include "Inc." in the title. Ajax Enterprises, Inc. and
plaintiff Ajax Enterprises are treated by the parties to be the
same company.

made to Safety Alliance as premiums on the policy and the $30,000 referral fee paid to Industrial.  However, the record contains copies of checks from Ajax Enterprises, Inc., Ujex Enterprises, Inc., Ajex Enterprises, Inc., and Q-Town, Inc. payable to Safety Alliance.  The referral fee of $30,000 was paid to Industrial by Ajex Enterprises, Inc.  Checks from "Ajax Enterprises, Inc." to Safety Alliance amount to only $20,566.00.[6]  The Certificate of Insurance only lists Ajax Enterprises as the insured and does not include any of Mr. Sciarra's other companies that paid the premiums.

As a means to rectify this situation, plaintiff states that it can simply amend the pleadings to conform to the evidence pursuant to Fed.R.Civ.P. 15(b).  Rule 15(b) mandates liberal amendments to conform pleadings to the evidence. See Santa Fe Downs, Inc. v. Ewell, 611 F.2d 815, 817 (10th Cir. 1980).  If the evidence is objected to, the Court may allow the pleadings to be amended, and "shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense of the merits."  Fed.R.Civ.P. 15(b).

---

[6]  Due to the poor quality of the Xerox copies, the exact amount paid by Ajax Enterprises, Inc. cannot be determined. Defendant Industrial states that Ajax paid only $20,566 and plaintiff does not dispute this statement.

13

Here, Industrial objected to Ajax's request for partial summary judgment requesting reimbursement of the referral fee and premiums paid because Ajax paid only a portion of the premiums. " . . . Rule 15(b) makes no provision for automatic amendment when, as here, proper objections are made to the admission of evidence." See Id.  It is not the intention of this Court to be overly formalistic, especially here where it appears that an amendment would not prejudice the defendants.  However, plaintiff had knowledge of the companies that paid the premiums and referral fee before it filed its complaint, and defendant Industrial has objected. See Green Country Food Market, Inc. v. Bottling Group, LLC, 371 F.3d 1275, 1281 (10th Cir. 2004)(finding that "...when proper objections have been made but no Rule 15(b) motion has been filed, the lack of prejudice to a party does not provide a basis for an [implied] amendment.").  For these reasons, if plaintiff wishes to amend its pleading under Rule 15(b), it should request leave to amend to do so.

**E.   Attorneys' Fees Cannot be Awarded**

Ajax has not proved at this stage that it is a prevailing party to warrant the award of attorneys' fees.  Because this issue can be disposed of on this point, we do not reach the merits of whether attorneys' fees can be awarded should Ajax prevail at trial.

14

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion for summary judgment and Industrial's cross motion for summary judgment are denied.  An Order will be entered consistent with this Opinion.


                                    s/Noel L. Hillman
Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.

Dated: December 7, 2006

15