**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

```
_____
                                :
AJAX ENTERPRISES,               :
AJAX ENTERPRISES, INC.          :
AJEX ENTERPRISES, INC.          :
UJEX ENTERPRISES, INC.          :
Q-TOWN, INC.                    :
TJAX INVESTMENT CORP.           :
                                :    Civil Action No.
             Plaintiffs,        :    04-4539 (NLH)
                                :
       v.                       :
                                :
DECLAN FAY, INDUSTRIAL          :        OPINION
INSURANCE AGENCY, AND JOHN      :
DOES 1-100,                     :
             Defendants,        :
_____:
                                :
DECLAN FAY,                     :
             Defendant/Third    :
             Party Plaintiff    :
                                :
       v.                       :
INSURANCE AGENCY                :
             Cross Claim        :
             Defendant          :
DALE FULLER, SAFETY ALLIANCE    :
GROUP, and INDUSTRIAL           :
             Third Party        :
             Defendants         :
_____:
                                :
INDUSTRIAL INSURANCE AGENCY     :
                                :
             Defendant/Third    :
             Party Plaintiff    :
       v.                       :
                                :
DECLAN FAY                      :
             Cross Claim        :
             Defendant          :
DALE FULLER, SAFETY ALLIANCE    :
GROUP, ROBERT MITCHELL, PEO     :
SOLUTIONS, and RKM AGENCY       :
             Third Party        :
             Defendants         :
_____
```

**APPEARANCES:**

Andrew L. Indeck, Esq.
Scarinci & Hollenbeck, LLC
1100 Valley Brook Avenue
PO Box 790
Lyndhurst, NJ 07071
*Attorney for Plaintiffs Ajax Enterprises, Ajax Enterprises, Inc.,*
*Ajex Enterprises, Inc., Ujex Enterprises, Inc., Q-Town, Inc. and*
*Tjax Investment Corp.*

Christopher Philip Leise, Esq.
White & Williams, LLP
Liberty View
457 Haddonfield Road
Suite 400
Cherry Hill, NJ 08002-2220
*Attorney for Defendant Declan Fay*

Evelyn Cadorin Farkas, Esq.
David C. Donohue, Esq.
Farkas & Donohue, LLC
389 Passaic Avenue
Fairfield, NJ 07004
*Attorneys for Defendant Industrial Insurance Agency*

**HILLMAN, District Judge**

## I.   INTRODUCTION

In response to this Court's Order and Opinion denying
plaintiff Ajax Enterprises's motion for summary judgment,
plaintiffs sought and were granted leave to file an amended
complaint.  Defendant and third-party plaintiff, Declan Fay,
filed a motion for summary judgment to dismiss the amended
complaint, or in the alternative, for partial summary judgment,
which was joined and supplemented by defendant Industrial
Insurance Agency ("Industrial").  Plaintiffs Ajax Enterprises,

Ajax Enterprises, Inc. ("Ajax"),[1] Ajex Enterprises, Inc. ("Ajex"), Ujex Enterprises, Inc. ("Ujex"), Q-Town, Inc. ("Q-Town") and Tjax Investment Corp. ("Tjax")(collectively, "plaintiffs") filed an opposition and cross motion for summary judgment.

## II.  BACKGROUND

Plaintiffs are professional employer organizations ("PEO's") that operate in the State of New Jersey.[2]  A PEO contracts with small businesses to "hire" the employees of the small business with the intent that they become employees of the PEO, and then leases the employees back to the small business.  This arrangement permits small businesses to pay less for workers' compensation insurance than if they tried to obtain it on their own.  In addition to contracting with the PEO to provide workers' compensation insurance, the small business is relieved from having to perform the tasks of payroll, benefits, and unemployment insurance.

Plaintiffs are businesses owned and operated independently by Justin Sciarra.  Mr. Sciarra is an attorney and held a New

---

[1]  Plaintiffs use the names Ajax Enterprises and Ajax Enterprises, Inc. interchangeably.  They appear from the pleadings to be the same entity.  They are referred to in this Opinion as "Ajax."

[2]  Ajax is incorporated in New Jersey; Ajex, Ujex and Tjax are incorporated in Delaware; and Q-Town is incorporated in Pennsylvania.

Jersey insurance producer license from 1979 until 1993.  He testified that he had difficulty in late 2001 and in 2002 securing workers' compensation insurance for his PEO businesses and eventually contacted Todd Hammond, a professional acquaintance who owned a PEO, about coverage.  Defendant Industrial, an Illinois corporation, was the insurer for Mr. Hammond's PEO.  It appears that Mr. Hammond spoke with someone at Industrial who in turn contacted defendant Declan Fay, a resident of Illinois.  Fay spoke with Mr. Sciarra about Ajax's workers' compensation needs.  Fay had conversations with third party defendant, Dale Fuller about Ajax.  Fuller had a relationship with third party defendant Safety Alliance Group ("Safety Alliance").[3]

On or about June 27, 2002, Fay contacted Mr. Sciarra and advised him that Safety Alliance would supply Ajax's workers' compensation coverage.  On or about that same time, Ajex paid a $30,000 referral fee to Industrial, and $40,000 was wired to a bank account in the name of Safety Alliance.

In July 2002, Mr. Sciarra flew to Chicago, Illinois for a lunch meeting with Fay, John Rodney and Mel Rodney (principals of Industrial), and Mr. Hammond.  Plaintiffs allege that Fay and/or Industrial advised Ajax that Safety Alliance was part of a

---

[3]  It appears that Fuller owned PEO Solutions, LLC and obtained workers' compensation insurance from Safety Alliance.

captive insurance program with St. Paul, Hartford and/or AIG "as the fronting insurance companies, and that the program was reinsured by 'A Paper' as defined by A.M. Best and Company."[4] Mr. Sciarra testified that Fay also told him that General Adjustment Bureau paid the claims.  At this time, no certificate of insurance or policy was obtained by plaintiffs as proof of insurance with Safety Alliance.

On or about February 2003, Ajax submitted its first workers' compensation claim to Safety Alliance which was denied as untimely.  Mr. Sciarra states he became suspicious because he did not receive the customary reservation of rights letter from Safety Alliance as part of its denial of claim.  He requested a certificate of insurance which was received on or after April 10, 2003 from Fuller.  The certificate was faxed to Mr. Sciarra from Industrial.  The Certificate provided that Safety Alliance Insurance Company was the insurer, Ajax was the insured, and RKM Agency and Associates was the insurance producer.  The policy number listed on the certificate was 66-866-723AS/NJ.

---

[4] Traditionally, a "captive" or "captive insurance company" is "an insurance company formed by a business owner to insure the risks of the operating business." Jay D. Adkisson, Captive Insurance Companies, xiii (2006).  A captive "is licensed as an insurance company in the domicile where it is formed, foreign or domestic, and may later be licensed to conduct the business of insurance by other jurisdictions as well." Id. at 1.  Its purpose is "to insure the risks of other companies that are also owned by the captive's owner, the parent" although a captive can underwrite risks unrelated to the captive's owners.  Id. at 1, 29.

Mr. Sciarra testified in deposition that he also made several phone calls to various entities, including the General Adjustment Bureau, an unnamed attorney in New Mexico, the North Carolina Insurance Department, St. Paul Insurance Company, and Hartford insurance company.  Based on the information he received, Mr. Sciarra believed that Safety Alliance did not exist.  Accordingly, he initiated this action against defendants Fay and Industrial arguing that they breached their duty owed to plaintiffs and made material misrepresentations.  Plaintiffs allege that they have paid defendants more than $157,151.00 in premiums for workers compensation insurance coverage.  Fay brought a third party action against Dale Fuller and Safety Alliance.

### III.  DISCUSSION

#### A.    Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such

6

that a reasonable jury could return a verdict in the nonmoving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  <u>Id.</u>  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  <u>Marino v. Industrial Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004)(quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  <u>Id.</u>  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**B.  <u>Defendants' Motion for Summary Judgment</u>**

In their amended complaint, plaintiffs allege that Fay was employed by or otherwise associated with Industrial, and Fay and/or Industrial were at all relevant times acting as plaintiffs' insurance agents.  Defendant Fay filed a motion for summary judgment, joined by defendant Industrial, denying the allegations and moving to dismiss plaintiffs' amended complaint on the grounds that plaintiffs come into this Court with unclean hands, and, even if their claims are valid, they incurred no damages.

**1.   Doctrine of Unclean Hands**

Defendant Fay, joined by defendant Industrial, argues that plaintiffs' claims should be dismissed under the doctrine of unclean hands because they violated New Jersey law when they failed to obtain State approval to self-insure a portion of their workers' compensation obligation and when four of the plaintiffs failed to register with the Commissioner of the Department of Labor as employee leasing companies as required by State law.[5]

---

[5]  Defendants state that prior to January 2003, none of the plaintiffs were registered as employee leasing companies with the New Jersey Commissioner of Labor in accordance with N.J.S.A. 34:8-70(10); in 2003, only Ajax was validly registered; none of the plaintiffs were registered in 2004; and in 2005, only Q-Town was properly registered with the Commissioner of Labor.  In support of their statement, defendants attach correspondence from the New Jersey Department of Labor and Workforce Development, including copies of registration certificates for Q-Town and Ajax.  In response, plaintiffs state that Ajax was registered as

Plaintiffs counter that defendants hands are unclean because, as licensed New Jersey brokers, they placed plaintiffs with a nonexistent carrier.[6]

What these arguments fail to address is that the doctrine of unclean hands is an equitable remedy.  See <u>General Development Corp. v. Binstein</u>, 743 F. Supp. 1115, 1133-34 (D.N.J. 1990)(stating that unclean hands is an equitable defense and only applicable to request for injunctive relief).  The relief sought here is not equitable, but legal.  In their amended complaint, plaintiffs demand judgment in their favor for compensatory damages, interest, and costs for claims of breach of duty and negligent misrepresentation.  They do not request any injunctive or equitable relief.  As such, the doctrine of unclean hand is

---

of 1996 and that "[a]ll of the other companies were combined under Ajax's registration because the owner of all the companies was the same."  Plaintiffs submitted a letter from the State of New Jersey Department of Labor to "Ajax Enterprises Inc." stating that its registration as an Employee Leasing Company was approved effective October 1, 1996.
    It appears uncontested that Ajax Enterprises, Inc. was properly registered for the relevant time period in this litigation.  Plaintiffs statement that all the other companies were combined under Ajax because the owner is the same is completely unsupported.  The letter from the Department of Labor is addressed to Ajax Enterprises only, and plaintiffs have admitted that each PEO was operated separately.  Also, Q-Town obtained a registration certificate independently in 2005.  Thus, aside from Ajax, there is no evidence that any of the other plaintiffs were properly registered as PEO's in the State of New Jersey during the relevant time period.

    [6] We conclude in Section III.B.1 <u>infra</u> plaintiffs' assertion that Safety Alliance did not exist during the relevant time period is uncontested and therefore established.

not applicable.  See <u>McAdam v. Dean Witter Reynolds, Inc.</u>, 896
F.2d 750, 756 n.10 (3rd Cir. 1990)(finding doctrine of unclean
hands not applicable where plaintiff only sought damages)
(citations omitted); <u>Lewis v. Hyland</u>, 554 F.2d 93, 102 (3d Cir.
1977)(finding proceedings equitable in nature and recognizing
unclean hands as an affirmative defense); <u>Miller v. Beneficial
Management Corp.</u>, 855 F. Supp. 691, 717 (D.N.J. 1994)(concluding
that unclean hands is an equitable defense generally not
applicable to bar claims seeking legal remedies)(citations
omitted); <u>Mata v. Mata</u>, No. 012086-05, 2005 WL 3312943, at *2
(N.J. Super. Ch. Dec. 6, 2005)(finding by Chancery Court that
plaintiff had unclean hands and could not seek equitable relief).
Accordingly, plaintiffs' legal claims are not barred as a matter
of law by the equitable doctrine of unclean hands.

    2.  **Premiums Paid by Plaintiffs**

    Defendants argue that plaintiffs have not incurred damages
with regard to the premiums it paid to Safety Alliance.  Fay
states that the policy provides that Plaintiffs have a $100,000
deductible per claim.  Of those employees that have submitted
claims, none of them amount to more than $100,000.  Fay argues
that since plaintiffs have not yet met their deductible for any
claim, Safety Alliance would not have been required to provide
coverage yet on any of those claims and, therefore, plaintiffs
have not incurred any damages.

Plaintiffs do not dispute that the agreed upon deductible was $100,000 and that they have paid less than that amount per claim.  However, plaintiffs argue that "[t]here are claims outstanding, as well as currently unknown claims."  Plaintiffs also argue that since the policy is nonexistent, so too then is the deductible.

Even if no real policy exists, plaintiffs agreed upon a $100,000 deductible and operated as if they were responsible for paying claims under that amount.  Cf. Diversified Packing and Development Corp. v. Dore & Assoc. Contracting, Inc., 48 Fed.Appx. 392, 399 (3d Cir. 2002)(stating that damages should be designed to place the party in the same position it would have been if the contract had been performed).  To the extent that plaintiffs seek as damages money they paid for claims that are within their agreed upon deductible amount, such request for relief is denied.  For example, if plaintiffs paid $40,000 in claims, plaintiffs are not entitled to include that amount in their damages.  If plaintiffs paid $140,000 directly to the claimant, then they would be able to claim $40,000 as part of their damages.

Although plaintiffs raise the possibility that the claims might continue to incur costs, and that unknown claims might arise, they provide no support for this assertion.  See Anderson, 477 U.S. at 256-57 (concluding that the nonmoving party must identify specific facts and affirmative evidence that contradict

those offered by the moving party to withstand summary judgment); Saldana, 260 F.3d at 232 (stating that a party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements).  The purported coverage period with Safety Alliance was approximately 2002-2003. Plaintiff Ajax filed its original complaint on September 20, 2004.  The statute of limitations for workers' compensation claims is two years.  See, e.g., Adams v. New York Giants, 827 A.2d 299, 303 (N.J. Super. 2003).  It is seems unlikely that new, timely claims can be filed.

Also, plaintiffs have not provided any evidence or facts that could support a finding that the existing claims will increase to more than $100,000 each.  Defendants have provided that the per claim amounts plaintiffs have paid thus far are: $6,584.71, $10,133.25 and $60,387.41.  Plaintiffs have not disputed these amounts and have not provided any facts that could show that these claims could increase to over $100,000.  Of the three claims, only the $60,387.41 claim shows some potential of incurring costs beyond $100,000.  However, plaintiffs have not identified any specific facts about nature of the injury (i.e., is it severe and/or permanent) or the type of medical care being received by the employee that could allow a finding that the claim will increase beyond plaintiffs' deductible.  All that plaintiffs provide is an ambiguous statement that claims are outstanding.  Thus, even taking all reasonable inferences in

12

favor of the plaintiffs, we find that plaintiffs have not alleged facts that if proven could allow a jury to conclude that they will incur costs beyond their deductible.

### 3.  Payments Made to Safety Alliance

Defendants also seek to have plaintiffs' claim for damages seeking reimbursement of the premiums plaintiffs paid to Safety Alliance dismissed.  Defendants argue that the money plaintiffs used to pay the premiums to Safety Alliance was collected by plaintiffs directly from their clients and, therefore, plaintiffs have suffered no discernable loss.  Also, that the amount paid in premiums was a cost of doing business and if plaintiffs did not pay Safety Alliance, they would have had to pay another insurance carrier.

Plaintiffs counter that part of the business of running a PEO is to collect fees from clients.  Decisions on how to use that money, including to pay premiums, are part of their business.  The fees collected are not earmarked for premiums nor are plaintiffs obligated to use particular fees to pay particular premiums.

We agree that the amount of premiums that plaintiffs paid to a nonexistent insurance company represents a discernable and recoverable loss.  How plaintiffs choose to collect their fees and what or how they choose to spend their revenue, assuming all choices comport with existing law, is left up to their business judgment.  However, plaintiffs are running a PEO which

statutorily requires that they maintain workers' compensation
coverage.  Plaintiffs must pay premiums to operate their
businesses.  Plaintiffs could not, under New Jersey law, operate
as they suggest and, "simply ... [keep] all of its clients' funds
(i.e., including the monies designated for Workers Compensation
premiums) and earn[] profits equaling the monies paid to
Defendants for fraudulent insurance coverage."  New Jersey
workers' compensation law requires that every employer insure its
potential workers' compensation liability with an authorized
insurance company, or comply with the strict statutory self-
insurance requirements.  See N.J.S.A. 34:15-71; N.J.S.A. 34:15-
77; Romanny v. Stanley Baldino Construction Co., 667 A.2d 349,
351 (N.J. 1995)(finding that an employer that fails to obtain
workers compensation insurance or comply with self-insurance
requirements commits a crime of the fourth degree).

Recognizing that plaintiffs must pay premiums in order to
operate a PEO that is not self-funded, defendants suggest that
the formula for damages in this situation is to take the amount
of premiums that plaintiffs paid to Safety Alliance, $162,340.94,
compare that figure with the cost of premiums they would have had
to pay to another insurance company, and subtract the difference.
The damages would be the difference between what plaintiffs paid
and what they would have had to pay in presumably higher
premiums.  In support of their theory, defendants rely on a New
Jersey appellate case holding that the trial court should have

14

deducted labor costs not expended in the calculation of damages. Paris of Wayne, Inc. v. Richard A. Hajjar Agency, 416 A.2d 436 (N.J. Super. 1980).  Defendants also rely on cases pertaining to the issue of calculation of lost profits. See Deaktor v. Fox Grocery Co., 475 F.2d 1112, 1116 (3d Cir. 1973); Bell Atlantic Network Services, Inc. v. P.M. Video Corp., 730 A.2d 406 (N.J. Super. 1999); Borough of Fort Lee V. Banque National de Paris, 710 A.2d 1 (N.J. Super 1998).

Although we agree that paying premiums, if plaintiffs are not self-insured, is a cost of doing business, this is not a "lost profits" case.  Plaintiffs are alleging that because of defendants' negligent misrepresentations, they paid premiums for workers' compensation coverage to a company that did not exist. If Safety Alliance did not exist, as we conclude it did not below, then someone or something received the payments without providing coverage.[7]  Plaintiffs have provided that they paid $162,340.94 in premiums to Safety Alliance.  We cannot say as a matter of law that plaintiffs' damages with regard to the premiums it paid are so speculative to warrant dismissal on summary judgment.  On the contrary, the claim appears to be on

---

[7]  We do not conclude as a matter of law whether defendants acted as brokers because genuine issues of fact remain on this issue. See III.C.2. infra.  If, however, plaintiffs are able to prove that defendants acted as brokers and had a duty to investigate Safety Alliance so that defendants stand in the shoes of the nonexistent insurance company, then they may be liable for the premiums paid.

solid footing.

**B.  Plaintiffs' Cross Motion for Summary Judgment**

Plaintiffs raise additional arguments in their opposition which they style as a cross motion.  Plaintiffs argue that Safety Alliance did not exist and that they are entitled to summary judgment on their claim of breach of duty.  Although seemingly part of their cross motion, plaintiffs ask the Court to make a determination that Safety Alliance did not exist.  We address this issue first.

**1.  Safety Alliance**

In our earlier opinion, the Court found that although plaintiffs provided persuasive evidence, they had not shown as a matter of law that Safety Alliance did not exist.  In their cross motion, plaintiffs reargue their position that Safety Alliance does not exist and in support submit the Affidavit of Margaret Shaw, insurance examiner for the State of New Jersey.  Ms. Shaw states in her affidavit that she conducted several searches in the producer licensing data base for Safety Alliance for the period January 1, 2002 through December 31, 2003, and found no match.  Defendants have provided no argument or evidence to the contrary.  Thus, based on the unopposed evidence submitted by the plaintiffs, we find that no reasonable jury could conclude that Safety Alliance existed during the time relevant to this litigation.  See Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 468 (1992)(finding plaintiff's theory

economically senseless so that no reasonable jury could find in plaintiff's favor).

**2.  Breach of Duty**

Plaintiff Ajax argued in its first motion for summary judgment that defendants breached their duty owed to plaintiff. The Court found that plaintiff had not met its burden to prove as a matter of law that defendants acted as brokers and denied the motion.  Plaintiffs raise the same argument in their cross motion and in addition provide the report of JoAnn M. Ralph.  Ms. Ralph opines that Declan Fay acted as a broker for Ajax for coverage placed through Safety Alliance, effective June 30, 2002, and for replacement coverage effective January 2003, and that Industrial acted as a broker for coverage placed through Safety Alliance effective June 30, 2002.

In response, defendant Fay submits the report of John T. Klagholz who opines that Fay did not act as an insurance agent for plaintiffs, and that industry practice does not obligate Fay to have affirmatively investigated the viability of Safety Alliance.  Klagholz offers the theory that Ajax intentionally did not procure workers' compensation insurance available through the New Jersey Workers Compensation Assigned Risk Plan ("Risk Plan"), and instead self-funded workers' compensation benefits without proper authorization[8] and charged its clients an inflated premium

---

[8]  Mr. Klagholz states that having a $100,000 deductible is akin to being self-insured for that amount.  Plaintiffs deny that

17

to turn a profit.  Klagholz states that since plaintiffs'
principal, Justin Sciarra, an attorney and former insurance
agent, decided to forgo the Risk Plan, he had an obligation to
investigate Safety Alliance and not rely on just certificates of
insurance rather than evidence of an insurance policy.

In addition, Industrial submitted the report of Martin A.
Lebson, who echoes the theory that plaintiffs' principal, Justin
Sciarra, was a sophisticated buyer in the insurance industry and
orchestrated his own scheme for workers' compensation coverage.
More particularly, Industrial maintains that it did not act as a
broker and that plaintiffs had already made the decision to go
with Safety Alliance before Sciarra met with anyone from
Industrial.

Although we have the benefit of the reports of Ms. Ralph,
Mr. Klagholz and Mr. Lebson since our last opinion, the
underlying facts have not changed regarding the alleged duties of
defendants.  No additional facts have been presented by
plaintiffs that could allow us to rule as a matter of law that
defendants acted as brokers or agents.  Plaintiffs' arguments
regarding the duty of a broker in investigating the viability of
an insurance company rests on the assumption that defendants
acted as brokers.  Plaintiffs have not proven there is no genuine

---

having a $100,000 deductible requires them to seek approval for
self-insurance.  This is a clear dispute of fact that cannot be
decided on summary judgment.

issue as to material fact on this issue that would entitled them to judgment as a matter of law.  For the reasons expressed in this Court's earlier opinion that reasonable minds could differ on the issue of whether defendants acted as brokers, we deny summary judgment.

### C.  Attorneys' Fees

Defendants argue that plaintiffs are not entitled to attorneys' fees under either N.J. Rule 4:42-9(a)(6) or (a)(8). In order to be eligible for attorneys' fees, plaintiffs must first prevail in the litigation.  See <u>Knight v. AAA Midatlantic Ins. Co.</u>, 926 A.2d 421, (N.J. Super. 2007)(establishing that plaintiff was the prevailing party and eligible to apply for attorneys' fees).  Since plaintiffs have not emerged as the prevailing party on summary judgment, they are not entitled to attorneys' fees at this time.  Therefore, we do not decide the merits of defendants' arguments and deny their motion to dismiss plaintiffs' claims for attorneys' fees without prejudice.


### IV.  CONCLUSION

For the foregoing reasons, we deny in part and grant in part defendants' motion for summary judgment, and deny in part and grant in part plaintiffs' cross motion for summary judgment. Defendants' motion to dismiss plaintiffs' claims under the doctrine of unclean hands is denied; defendants' motion to dismiss plaintiffs' claims for damages regarding payments made to

claimants under the $100,000 deductible is granted; and defendants' motion to dismiss plaintiffs' claim for damages regarding the premiums it made is denied.  Plaintiffs' motion for summary judgment that defendants breached their duty is denied; and plaintiffs' request for a ruling that Safety Alliance did not exist at the relevant times herein is granted.  Since there is no prevailing party as a result of this Opinion deciding the motions for summary judgment, we do not reach the merits of whether plaintiff is entitled to attorneys' fees.


                          s/Noel L. Hillman
                          NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated: August 31, 2007


20